IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HECTOR SOTO<br><br>Defendant. | CRIMINAL NO. 19-541 |

**OPINION**

**Slomsky, J.**                                                                                                                                                                       **November 29, 2023**

## I. INTRODUCTION

On January 4, 2022, Hector Soto ("Defendant"), while represented by counsel, pled guilty to one count of Manufactur[ing] [] Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e). (Doc. Nos. 51-52.) He was sentenced to 250 months' imprisonment to be followed by lifetime supervised release. (Doc. No. 66.) Defendant did not file an appeal. On June 2, 2023, Defendant filed the present Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2255 alleging a violation of his Sixth Amendment right to effective assistance of counsel. (Doc. No. 72.) On July 10, 2023, the Government filed a Response in Opposition (Doc. No. 76.) On July 31, 2023, Defendant filed a Reply. (Doc. No. 80.) For reasons that follow, Defendant's Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 72) will be denied.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On or around July 31, 2018, two ex-girlfriends of Defendant reported to the Philadelphia Police Department Special Victims Unit their discovery of pornographic images on Defendant's

cellphone and laptop which included images of a minor.  (See Case No. 18-1333 Doc. No. 1 at 8.) They turned the cellphone and laptop over to the police.  (Id.)  The police interviewed both women, as well as the aunt of the minor in the images.  (Id. at 8-9.)  On August 20, 2018, the police applied to a United States Magistrate Judge for a search warrant to search the cellphone and laptop.  (See Case No. 18-1333 Doc. No. 2.)  The warrant was approved.  (See id.)  Prior to applying for the warrant, the police opened the cell phone and laptop to obtain their serial numbers and used them to identify the devices in the search warrant.  The affidavit in support of the search warrant reads as follows:

> 22. On July 31, 2018, 43 year old Yvette Sanchez (Sanchez) reported the following to Philadelphia Police Department Special Victims Unit Detectives: Sanchez and HECTOR EMMANUEL SOTO (DOB: 01/05/1982) [Defendant] had been dating approximately 4 years in January 2018, when they had an argument and Sanchez kicked SOTO out of the house (540 W. Pike Street, Philadelphia, PA). SOTO took some of his items from the residence, but left others behind, including a cellphone he no longer needed because he had obtained a new one. SOTO never returned to the residence to retrieve his old cellphone. In July 2018, Sanchez asked her 23 year old daughter, identified as Yamilette Olmo (Olmo) to help Sanchez check SOTO's old cellphone phone to see if Sanchez could transfer her own number to the phone and re-use it.
>
> 23. While looking at Soto's phone, Olmo and Sanchez went into the pictures section and observed the following:
>
>     a. Naked pictures of Sanchez's daughter-in-law, identified as Alessa Vasques (21 years of age).
>
>     b. A video of SOTO setting up Vasquez's bathing suit on his bed and masturbating onto it.
>
>     c. Close-up pictures of Olmo's clothed breasts and butt, which she did not pose for.
>
>     d. Several pictures of an individual, later identified as SOTO, placing his penis into the mouth of a sleeping little girl (hereafter referred to

2

as MINOR #1, whose identity is known to your affiant, and who was born in 2013).

24. Olmo recognized MINOR #1 from seeing pictures of her on the Facebook page of SOTO's current girlfriend, who is MINOR #1's Grandmother, (the Grandmother). After seeing the pictures on SOTO's cellphone, Sanchez went to the Grandmother's house and told her what she had found. Also present at the house was the Grandmother's daughter, who is MINOR #1's Aunt (the Aunt). Both the Grandmother and the Aunt (both of whose identities are known to your affiant) positively identified the photos of MINOR #1 as the little girl depicted in an image described in paragraph 23d. Thereafter, Sanchez and the Aunt reported the incident to the Philadelphia Police Department and Sanchez turned over SOTO's cellphone, which was identified as a ZTE Z988 cellphone with serial number 320166886038. Philadelphia Police did not access the contents of the cellphone other than to obtain identifying information and place the cellphone in airplane mode.

25. On July 31, 2018, the Aunt was interviewed by Philadelphia Police Department Special Victims Unit Detectives and provided the following additional information: The Aunt confirmed that she had seen one picture of MINOR #1 on SOTO's cellphone as described in Paragraph 23d. Sanchez told her there were more, but the Aunt did not want to see any more images. The Aunt also reported seeing videos on SOTO's cellphone of SOTO peeing and ejaculating onto various things used by the Aunt, including her toothbrush, pillows, and her food. The Aunt also reported that MINOR #1 would stay over at her house on occasion (a residence located in Philadelphia where SOTO lived with the Grandmother and the Aunt).

26. On July 27, 2018, the Grandmother was interviewed by Investigators with the Department of Veterans Affairs (VA). The Grandmother and SOTO worked together at the Philadelphia VA Medical Center in Philadelphia. The Grandmother reported to investigators the following additional information: The Grandmother and the Aunt found the same pictures described in paragraph 23d on a laptop belonging to the Aunt. The pictures came from SOTO's personal cell phone, which the Grandmother suspected had linked to the laptop wirelessly. The pictures were found inside the deleted trash folder. The Grandmother positively identified the male in the photos as SOTO.

27. The Aunt turned over an HP 15-bs076nr laptop with serial number CND81214DS to Philadelphia Police. This is the laptop reported by the Grandmother to contain sexually explicit photos of MINOR #1 as described in paragraph 26.

>28. Based upon training and experience, your Affiant knows that digital files are easily moved from one digital device to another, including but not limited to: via cloud storage, via email or other direct messaging, or via hardwired connection to a computer or storage device. For this reason, it is possible that digital files on a cellphone may have been transferred or backed-up to another device used or owned by SOTO.

Id. at 8-10.

After police obtained the warrant, they searched the devices and found the images described above, including the image of Defendant placing his penis into the mouth of the minor. (Doc. No. 76 at 4.) The police discovered fourteen such images in total. (Id.) On September 12, 2019, Defendant was charged federally in one count with Manufactur[ing] [] Child Pornography, in violation of 18 U.S.C. § 2251(a) and (e). (Doc. No. 1.) On January 4, 2022, Defendant, while represented by counsel, pled guilty to this charge pursuant to a Guilty Plea Agreement with the Government. (Doc. Nos. 51-52.)

At Defendant's plea hearing, the Court reviewed his plea agreement with him in detail and ensured that the plea was entered knowingly and intelligently. (See Doc. No. 74 at 16-18.) Defendant was also advised, and he acknowledged that, by pleading guilty and waiving his constitutional rights, he could not thereafter claim that he was not guilty or that his rights had been violated – such as by challenging the manner in which the Government obtained evidence against him. (Id. at 30-31.) Defendant advised that he understood the provisions of his plea agreement, that he read the agreement and discussed it with his attorney prior to the hearing, and that he had no questions about it. (Id.) Following the Court's lengthy colloquy, Defendant's guilty plea was accepted because it was entered knowingly, intelligently, and voluntarily. (Id. at 37-39.)

Defendant did not file an appeal. Instead, on June 2, 2023, Defendant filed the instant Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 72). He

alleges a violation of his Sixth Amendment right to effective assistance of counsel. On July 10, 2023, the Government filed a Response in Opposition. (Doc. No. 76.) On July 31, 2023, Defendant filed his Reply. (Doc. No. 80.)

### III. STANDARD OF REVIEW

28 U.S.C. § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

Id. § 2255(a). "Motions pursuant to 28 U.S.C. § 2255 are the presumptive means by which federal prisoners can challenge their convictions or sentences." Winston v. Warden Canaan USP, No. 23-1969, 2023 WL 4759240, at *1-2 (3d Cir. July 26, 2023) (quoting Okereke v. United States, 307 F.3d 117, 120 (3d Cir. 2002)). Further, "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003).

The test for determining ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). To successfully show ineffective assistance of counsel, a defendant must prove: (1) deficient performance by his attorney amounting to "errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment"; and (2) that he was prejudiced by his attorney's performance due to "errors [that] were so serious as to deprive the [Defendant] of a fair trial, a trial whose result is reliable." United States v. Travillon, 759 F.3d 281, 289 (3d Cir. 2014) (quoting Strickland, 466 U.S. at 687). However, "[t]here can be no Sixth Amendment deprivation of effective counsel based on an

5

attorney's failure to raise a meritless argument." United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999).

Courts have applied the Strickland test to a defense counsel's performance at different stages in a criminal proceeding. In the context of a guilty plea, the first Strickland prong remains unchanged, and the second prong requires "the defendant [to] show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

Moreover, a defendant is not necessarily entitled to a hearing on a § 2255 motion. See United States v. Arrington, 13 F.4th 331, 335 (3d Cir. 2021) (holding the district court did not abuse its discretion in declining to hold a hearing on § 2255 motion). A defendant is entitled to a hearing if he "alleges a set of facts that is not frivolous or clearly contradicted by the record" and demonstrates that "he would plausibly be entitled to relief under Strickland." Id. In other words, "a hearing must be held if the claim 'does not conclusively fail either prong of the Strickland test.'" United States v. Haisten, 50 F.4th. 368, 373 (3d Cir. 2022) (citing Arrington, 13 F.4th at 334).

## IV. DISCUSSION

Defendant asserts that his trial counsel was constitutionally ineffective because he should have moved to suppress all evidence obtained from his laptop and cell phone. (Doc. No. 72 at 8, Doc. No. 80 at 2-4.) In effect, he contends that the Government conducted two searches of his cellphone and laptop. According to Defendant, the first search occurred when the Government unlawfully obtained the serial numbers of the cellphone and laptop from inside the devices prior to securing the search warrant. The second search occurred after the Government obtained the search warrant. (Doc. No. 80 at 2.) During the second search, the images of the minors were retrieved. While Defendant seems to argue that the first search tainted the second one because the serial numbers

are referred to in the probable cause affidavit, he does not challenge the legality of the second search on any other ground.

### A. The Fourth Amendment and the Independent Source Doctrine

The Fourth Amendment protects against "unreasonable searches and seizures" of "persons, houses, papers, and effects." U.S. CONST. AMEND. IV. "As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is reasonableness.'" Riley v. California, 573 U.S. 373, 381-82 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). Reasonableness "generally requires the obtaining of a judicial warrant." Riley, 573 U.S. at 382 (quoting Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 653 (1995)). The warrant requirement ensures that a neutral and detached magistrate makes the decision on whether probable cause to support the search exists, rather than a police officer in the heat of an investigation. Id.

To obtain a warrant, the government must show probable cause that the location to be searched contains evidence of criminal activity. United States v. Alexander, 54 F.4th 162, 171 (3d Cir. 2022). Probable cause requires "a fair probability that contraband or evidence of a particular crime will be found in a particular place." Id. (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Probable cause is a "fluid concept" which rests on the strength of the belief that seizable articles can be found at a particular location. Id.

Further, under what is known as the independent source doctrine, "evidence that was in fact discovered lawfully, and not as a direct or indirect result of illegal activity, is admissible." Alexander, 54 F.4th at 172 (quoting United States v. Herrold, 962 F.2d 1131, 1140 (3d Cir. 1992)). In Murray v. United States, the United States Supreme Court held that, when a potentially illegal search is followed by a lawful search conducted in accordance with a warrant obtained pursuant

to probable cause without regard to any evidence sourced from the prior potentially illegal search, evidence seized during the lawful search need not be suppressed. 487 U.S. 533, 535 (1988).

In applying that precedent, the Third Circuit in Herrold held that "even assuming that some factual averments in the affidavit [to obtain a search warrant] are tainted, they do not vitiate a warrant which is otherwise validly issued upon probable cause reflected in the affidavit." 962 F.2d at 1138 (quoting United States v. Johnson, 690 F.2d 60 (3d Cir. 1982)); see also Alexander, 54 F.4th at 172-73 (affirming the principle that a tainted warrant does not undermine a validly issued warrant based upon the probable cause set forth in the balance of the affidavit).  In Herrold, the government obtained key evidence to convict the defendant by means of a search warrant.  962 F.2d at 1134-35.  The affidavit supporting the warrant alleged facts obtained during a prior warrantless search of Herrold's property.  Id.  The Third Circuit concluded, however, that because the affidavit for the warrant also contained legally obtained, independent grounds sufficient to establish probable cause for the search, the evidence obtained pursuant to the execution of the warrant need not be suppressed at trial.  Id. at 1143-44.

### B. Application of the Independent Source Doctrine to the Affidavit of Probable Cause

Here, the serial numbers obtained from Defendant's laptop and cellphone were included in the search warrant affidavit.  (Case No. 18-1333 Doc. No. 2.)  Although the serial numbers were used only to identify the devices in the affidavit of probable cause and, even assuming the warrantless search for them was illegal, there was still ample averments in the affidavit to support a finding of probable cause to search Defendant's cellphone and laptop.  As noted in the affidavit of probable cause quoted extensively supra, this evidence included testimony from multiple lay witnesses who saw on the devices the images of Defendant engaging in sexually explicit activity with a minor. Id.  After obtaining a warrant from a Magistrate Judge, the police searched the cellphone and laptop

in question and found the images that matched the descriptions given by the two witnesses and as corroborated by the grandmother. Id.

Despite the ample evidence of probable cause contained in the search warrant affidavit, Defendant still contends that opening the cellphone and laptop to retrieve the serial numbers was an unlawful search because it was done prior to obtaining the search warrant. (Doc. No. 80 at 2-3). He relies on the Supreme Court's ruling in Arizona v. Hicks, 480 U.S. 321, 324 (1987), asserting the Government's intrusion into his two devices to obtain the equipment's serial numbers prior to obtaining a search warrant constitutes a search in violation of the Fourth Amendment. Id.

In this regard, it appears that Defendant is correct.[1] In Hicks, police officers entered an apartment after being notified of the discharge of a firearm within the apartment. 480 U.S. 321, 323 (1987). They searched the apartment based upon probable cause arising from the discharge of the firearm. Id. at 323-24. One of the police officers then noticed what appeared to be expensive, out of place stereo equipment in the apartment and moved the equipment to obtain the serial numbers and determine whether they were stolen. Id. Upon review of this police conduct, the United States Supreme Court held that the officer had engaged in a warrantless search in violation of the Fourth Amendment. Id. at 326-27. The court found that moving the stereo equipment was a separate search on an unrelated matter for which there was no probable cause. Id.

---

[1] A distinction must be made in this case between the search of the devices that uncovered the serial numbers and their seizure by writing them down. The initial search without a warrant of the devices for the serial numbers appears to be illegal. However, the seizure of the numbers was not. In Hicks, the Supreme Court noted as follows: "the mere recording of the serial numbers did not constitute a seizure [because] … it did not 'meaningfully interfere' with respondent's possessory interest in either the serial numbers or the equipment." 480 U.S. at 324-25.

9

This Court is mindful that the case here is factually different from Hicks, which involved the opening of a cellphone and laptop as opposed to moving stereo equipment, and that other District Courts have reached different conclusions in similar cases on the question of whether opening the back of an electronic device and removing its battery to view the serial number constitutes a search. For example, in United States v. Pacheco, the Western District of New York noted that, in dicta in Riley, 573 U.S. 373 (2014), the Supreme Court opined that law enforcement can legally open the back of a phone and remove its battery to turn off the phone.[2]  No. 11-CR-121A, 2014 U.S. Dist. LEXIS 184000, at *12-13 (W.D.N.Y. Sept. 22, 2014).  The district court in Pacheco held that

> If . . . officers can legally enter [a phone] without a search warrant and remove the battery so as to disconnect it from the network, they can legally enter the phone without a search warrant and remove the battery so as to view hard copy phone identification numbers which do not constitute 'digital data' contained within the phone.

Id. at 13;  see e.g., United States v. Lowe, No. 2:14-CR00004-JAD, 2014 U.S. Dist. LEXIS 145458, at *3 (D. Nev. Oct. 10, 2014) ("it was reasonable for the government to remove the back cover of Lowe's cell phone without a search warrant because a cell phone's serial number is not the type of 'sensitive personal information requiring a search warrant under Riley v. California.'"); United States v. Vega-Cervantes, No. 1:14-CR-234-WSD, 2015 U.S. Dist. LEXIS 106705, at *15 (N.D. Ga. Aug. 13, 2015) ("[Officer] Yates simply removed the battery to view identifying information . . . this minimally intrusive examination does not implicate the privacy interests at issue in Riley."); Ward v. Lee, No. 19-CV-03986, 2020 U.S. Dist. LEXIS 216159, at *25 (E.D.N.Y. Nov. 18, 2020) ("the fact that the [serial number] gleaned from the phone was non-

---

[2] The dicta in Riley v. California states that "[r]emote wiping can be fully preventing by disconnecting a phone from the network. There are at least two simple ways to do this: First, law enforcement officers can turn the phone off or remove its battery. Second…they can leave a phone powered on and place it in an enclosure that isolates the phone from radio waves." 573 U.S. at 390.

digital, identifying information supports the conclusion that the search did not violate the Fourth Amendment.").

However, even though Defendant may be correct in asserting that the serial numbers of his devices were obtained illegally without a warrant, this does not serve as a valid basis to suppress the explicit images obtained pursuant to the search warrant because the statements of Defendant's two ex-girlfriends and the grandmother were an independent source of probable cause sufficient to support the issuance of the warrant. In the affidavit of probable cause to obtain the search warrant the police noted that three witnesses observed child pornography on the devices. They identified the minor victim and Defendant engaging in sexually explicit conduct. Their observations constituted ample probable cause to support the search warrant affidavit for the two devices regardless of the reference to the serial numbers.

Because the basis for the issuance of the warrant to search Defendant's two devices was not in any way dependent on the serial numbers obtained from the Government's pre-warrant examination of them, the searches pursuant to the warrant were lawful. The Government had sufficient, independent grounds to establish probable cause to search Defendant's devices. As such, the issuance and execution of the warrant to search Defendant's devices was lawful.

Since Defendant was not entitled to the suppression of evidence secured by searching his cellphone and laptop, his counsel was not constitutionally ineffective in failing to move to suppress the evidence obtained from the cellphone and laptop. A lawyer is not constitutionally ineffective for not raising a meritless argument. Thus, his counsel's failure to move to suppress the evidence in question did not result in a reasonable probability that, but for counsel's error, Defendant would not have pled guilty and would have insisted on going to trial. In short, Defendant was not

prejudiced by the conduct of his counsel, and thus his claim of ineffective assistance of counsel fails as a matter of law.[3]

### C. A Certificate of Appealability Will Not Be Issued

When a court issues a final Order denying a § 2255 motion, the court must also decide whether to issue a certificate of appealability. See 28 U.S.C. § 2255; Fed. R. Crim. P. 11(a). A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court will not issue a certificate of appealability in this case because Defendant has failed to make a substantial showing of the denial of a constitutional right.

## V. CONCLUSION

Because the record and files conclusively show that Defendant is not entitled to habeas relief, he is not entitled to a hearing on the § 2255 Motion and none will be held here. Accordingly, Defendant's Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 72) will be denied.

---

[3] Defendant also argued in his § 2255 Petition that his counsel was ineffective by not accurately explaining to him what constitutes child pornography under 18 U.S.C. § 2251(a) and (e). In his Reply to the Government's Response, Defendant concedes that this argument is foreclosed by United States v. Heinrich, 57 F. 4th 154, 160 (3d Cir. 2023). For this reason, this claim of ineffective assistance of counsel need not be addressed further.